## E. HUNTER YOUNG, BY NEXT FRIEND, AND EWELL H. YOUNG, v. DR. R. L. DOZIER. (2 cases).

Middle Section.    December 4, 1926.

Petition for Certiorari denied by Supreme Court January 29, 1927.

1. **Physicians and surgeons. A surgeon is not an insurer of a cure.**
As the surgeon does not guarantee a cure and there is not even an implied promise to effect a cure or even a partial healing, he is only required to discharge his duty with reasonable skill and ability. Presuming a careful diagnosis he is not liable for damages resulting from an honest mistake in determining upon the character of treatment to be administered or in determining upon the success of the operation. These things are mere matters of judgment upon which an action cannot ordinarily be predicated, and negligence is not to be inferred therefrom.

2. **Physicians and surgeons. Evidence. Evidence held not to show surgeon guilty of negligence.**
In an action to recover for malpractice in setting a broken limb where the evidence showed that the defendant had used an X-ray and the skill that would ordinarily be required of one of his standing in setting the bone, held that there was no evidence of negligence and the defendant was entitled to a directed verdict.

3. **Trial. Directed verdict for defendant.**
It is only when the evidence most favorable for plaintiff is insufficient to go to the jury that a verdict may be directed for the defendant.

Appeal in Error from Circuit Court, of Davidson County; Hon. E. F. Langford, Judge.

Affirmed.

W. A. Guild, of Nashville, for plaintiffs in error.

John M. Cate and George H. Armistead, Jr., of Nashville, for defendant in error.

DeWITT, J.    These two actions, instituted by E. Hunter Young, a minor, and by his father, Ewell H. Young, respectively, were tried together by agreement before the circuit judge and a jury; and at the conclusion of the evidence offered by the plaintiffs the trial judge

sustained a motion to direct the jury to return verdicts in favor of the defendant. Motion for a new trial was made and overruled and the plaintiffs have appealed in the nature of a writ of error. The suits are based upon alleged malpractice of defendant, a surgeon, in failing to reduce properly a fracture which E. Hunter Young had suffered near the end of the femur of his left leg, at the knee joint. In the declarations it was charged that the defendant was negligent in not bringing the ends of the broken bone into proper position, in failing to maintain such apposition, in failing to properly adjust, treat and care for the leg; in failing to use an X-ray machine and other available equipment and appliances to determine whether or not proper apposition or setting had been effected, and to determine the condition and course of the fracture during the curative process; and in failing to make reasonably frequent examinations and tests of said fracture to determine its progress and correct any defect or fault therein. Upon pleas of the general issue the suits were thus tried.

On September 22, 1921, E. Hunter Young suffered the injury while playing football. The fracture was in the condyle or rounded eminence at the end of the femur, or upper bone of the leg, beginning in the surface of the joint and extending upward and outward about three inches. It was practically in the knee joint. He was carried to the hospital of the defendant surgeon, who was employed to treat him for the injury. Upon ascertaining that the leg was broken, the defendant looked at the leg through a fluoroscope, placed the leg in temporary splints and waited for the swelling to subside so that he could reduce the fracture by bringing the ends of the broken bone properly together. This was accomplished on the third day after the injury and the leg was placed in a plaster of Paris cast. The defendant took three X-ray pictures of the fracture before he reduced it. From time to time he looked at the fracture, not only with his naked eye, but also through the fluoroscope and seeing that it had slipped and was not in position he reduced it on three successive days, each time putting a new plaster of Paris cast on it. Finding that he was not able to hold the parts of the bone in apposition by means of casts he decided to endeavor to reduce the fracture by the use of a double inclined plane, which is a sort of splint on which the leg rests at an angle. It is a sort of V shaped splint, and the leg was bandaged around this splint. This was done on or about the tenth day after said plaintiff was brought to the hospital. On the day before the defendant placed the leg in this plane he looked at the fracture through the fluoroscope. This is an instrument holding the fluoroescent screen so that in using the X-ray machine the expert can see the condition of the bone. The plaintiff's leg remained in this inclined plane for several weeks, after which

time he was taken to his home. After his leg was set with the inclined plane the defendant did not further use the X-ray. After some weeks had elapsed the defendant determined that the bone had healed and when the leg was released it was found that it was crooked or "knock-kneed;" the lower leg slanting at an angle of about ten degrees so that the feet could not be brought within six inches of each other. The young man later was operated upon by another surgeon who performed the operation of opening the leg to the bone above the knee, chiseling out a V shaped section so that by a straightening and healing process the crookedness was remedied although the leg was left slightly shorter than the other leg. The defendant had offered to perform this operation but plaintiffs declined to allow him to perform it. In this operation the knee was not affected so that the second operation was totally different from the first.

Although the plaintiffs generally committed entirely to the defendant the determination as to the treatment to be administered, at one time during the treatment the defendant advised them that what is known as the open operation method might be successfully employed. This would have been to cut into the bone at the knee and use a nail to fasten the broken parts together. The defendant did not use this method because it would have been attended with great danger that the use of the nail might cause an outlet and loss of the synovial fluid in the knee joint which would result in permanent stiffness of the knee. It is not contended that defendant was negligent in failing to perform this operation.

By the testimony of Dr. Duncan Eve, Jr., a surgeon of skill and experience, it appears that it is very difficult to reduce such a fracture; the flesh must be brought down to its normal position and the bone must be brought together in apposition. The knee joint is the largest joint in the body, it has the most ligaments and muscles, and it is generally advisable not to open the knee joint. In some fractures of this kind the surgeon is unable to hold the parts together. The procedure should then be an open operation. After the inclined plane is taken off and the leg found to be crooked the open operation is the next method to be employed. Some times it is difficult to get the parts of the bone back in apposition. This may be due to restlessness of the patient or to muscular spasms. After the inclined plane is used the ordinary custom is to take X-ray photographs in the event that the patient suffers very much after a few days. There is no evidence that after the use of the inclined plane, the patient had any unusual suffering or there was any other symptom indicating that the proper apposition had not been accomplished and maintained.

As the surgeon does not guarantee a cure and there is not even an implied promise to effect a cure or even a partial healing, he is only required to discharge his duty with reasonable skill and ability. Presuming a careful diagnosis he is not liable for damages resulting from an honest mistake in determining upon the character of treatment to be administered or in determining upon the success of the operation. These things are mere matters of judgment upon which an action cannot ordinarily be predicated, and negligence is not to be inferred therefrom. Wood v. Clapp, 4 Sneed, 65; Burnett v. Layman, 133 Tenn., 323, 181 S. W., 157; 21 R. C. L., p. 391. The law credits the medical practitioner with the presumption that he has done his duty and in a suit for injuries caused by alleged malpractice the burden is on the plaintiff to prove the want of reasonable and ordinary care or skill. It must be shown that the injury complained of resulted from such want of care or skill. A bare possibility of such result is not sufficient. The burden of proof is not shifted by showing that an unsuccessful result has attended the treatment of the patient by the physician. 21 R. C. L., p. 406, and cases there cited. It is not disputed that the defendant made the necessary examinations with the X-ray and otherwise up to the time of beginning the use of the inclined plane; and that the fracture in question was so serious and so difficult to remedy, that even with the exercise of a very high degree of care and skill the treatment might be unsuccessful. It is insisted that the case should have gone to the jury to determine the question of liability because the defendant did not use an X-ray after beginning the use of the inclined plane. It is true that in passing on a motion for peremptory instructions, the court must take the most favorable view of the evidence appearing in the record supporting the rights asserted by the party against whom the motion is made. Railroad v. Morgan, 132 Tenn., 5, 175 S. W., 1148. We must take into consideration the evidence adduced by the plaintiff, together with all reasonable inferences therefrom, and determine whether or not it fails to show any basis of liability. As the burden was on the plaintiff to prove that the failure to use the X-ray after the inclined plane was employed brought about the unsuccessful result, and as there is no evidence that if the X-ray had been so used this result would have been avoided, we are unable to see in this failure any ground for liability. The trial judge so held. Likewise we cannot hold that the plaintiff established any basis of liability in showing that a set screw connected with the inclined plane came loose, or came out, for there is no evidence what might be the result of the screw coming loose. It does not appear how this would impair the efficiency of the inclined plane so that it would not hold the leg in the proper place. The burden was still on the plaintiff to show these things and he totally failed, or was unable, to show them.

With further reference to the failure to use the X-ray machine, it is claimed that the defendant was taking chances and not precautions, by guessing in the dark when the light of the X-ray machine was available. But the testimony of Dr. Eve, who was introduced by the plaintiffs, shows that ordinary skill and diligence requires the use of the X-ray machine, when the inclined plane is being used, only when there are symptoms indicating the lack of proper apposition. These symptoms did not appear and therefore it was reasonably assumed that there was such apposition. At this time the healing period was evidently far advanced. It does not appear that the use of the X-ray would have revealed any condition other than an unsatisfactory reduction which could not then be remedied.

For all of these reasons, therefore, we find that the plaintiffs have not established any basis of liability, even after taking the most favorable view of the evidence in their favor. The trial judge was not in error in directing the verdict for the defendant and his judgment, based upon said verdict and dismissing the suit, is affirmed. The cost of the appeal will be adjudged against the plaintiffs and the surety on their cost bond.

Faw, P. J., and Crownover, J., concur.