JOHN BUTLER *v.* DR. E. M. MOLINSKI.

(*Jackson,* April Term, 1954.)

Opinion filed March 11, 1955.

HAROLD R. RATCLIFF and RAYMOND O. VALLEY, both of Memphis, for plaintiff in error.

EMMETT W. BRADEN and WALTER P. ARMSTRONG, JR., both of Memphis (ARMSTRONG, McCADDEN, ALLEN, BRADEN & GOODMAN, of Memphis, of counsel), for defendants in error.

126

Mr. Special Justice Granville S. Ridley delivered the opinion of the Court.

The questions made on this appeal were decided adversely to the contention of the plaintiff in error by both the trial judge and the Court of Appeals. We granted certiorari and filed with the record the following memorandum:

"The plaintiff in error sued the defendant for damages resulting from (1) negligence in setting his wife's broken arm at the wrist; (2) for assault and battery upon his wife, i. e. setting her arm in violation of her express instructions.

"The wife also brought a separate action for damages resulting in the injury based upon negligence and assault and battery.

"The two cases were tried together by consent of the parties. At the conclusion of all the evidence the

trial judge overruled the defendant's motion for a directed verdict in Mrs. Butler's case and sustained the motion as to Mr. Butler's case and dismissed it. There was a mistrial in Mrs. Butler's case, and a wayside bill of exceptions taken. A motion for a new trial was made in Mr. Butler's behalf and overruled. The Court of Appeals affirmed. The real basis upon which the trial judge based his action was 'that the plaintiff (Mrs. Butler) has failed to show any negligence on the part of Dr. Molinski, and has therefore failed to show any actual damages, her husband's case must go out', and upon inquiry from counsel for defendant the court further said, 'Her husband's case must go out, for he could only recover in the event the defendant is found guilty of negligence, and that his wife suffered actual damages.'

"The Court of Appeals affirmed. The plaintiff in error has petitioned the Court for certiorari and assigned as error that the motion by the defendant for peremptory instructions should have been overruled because (1) there was proof of negligence; (2) there was proof that the defendant was guilty of an assault and battery upon plaintiff's wife; (3) 'Even if respondent was not guilty of negligence, and even if the damages of the wife of petitioner were properly limited to nominal and punitive damages, it does not follow that this petitioner was as a matter of law entitled to no damages.' "

The counsel were directed to discuss the following determinative questions:

"(1) Whether or not there was material evidence to take the wife's case to the jury as to her right to recover 'substantial' damages. If so, was it proper for

the court to dismiss Mr. Butler's case with that issue still undecided by the jury?

"(2) Conceding that the wife would be entitled to recover only 'nominal and punitive damages', does it follow as a matter of law that the petitioner is entitled to recover *no damages?*"

The record shows that there was no evidence to support the allegation of negligence by Dr. Molinski in treating Mrs. Butler's broken wrist and this issue was taken from the jury. The only issue submitted to the jury, upon which there was a mistrial, was whether or not the defendant was guilty of an assault and battery upon Mrs. Butler in operating upon her wrist in violation of her instructions to procure the services of an orthopedic surgeon for that purpose.

There was a directed verdict for the defendant in Mr. Butler's case on the ground that there was no evidence of negligence by Dr. Molinski, and since the wife would be entitled to recover only "nominal and punitive" damages, Mr. Butler was not entitled to damages in any amount.

██ We think the Court of Appeals was correct in affirming the ruling of the trial judge. There is no evidence to sustain the charge of malpractice. While it is clearly shown that Mrs. Butler sustained a severe fracture of the bones in the wrist joint it does not follow as a matter of law that her present disabled condition is the result of any failure on the part of Dr. Molinski to render such professional aid as is required by law. Nor is it shown that what he did was contrary to the best known practice of the medical profession.

Considering the extent of Mrs. Butler's injury, there being multiple fractures in the wrist joint, her present disability could not be attributed alone to the lack of pro-

fessional skill on the part of Dr. Molinski. The evidence shows without serious dispute that the damage to the wrist, as a result of her fall, was such that it was a difficult matter for a skilled surgeon to restore it to its normal condition, notwithstanding the observance of the best known practice in an effort to prevent a deformity.

It was the contention of petitioner's counsel that it was negligence not to reduce the fracture by the use of what is known to the profession as the "Rush pin". But all the medical proof is to the contrary. A witness for the defendant, Dr. M. J. Stewart, testified as follows:

"Q. I asked why you could not get a good result with this pin on Mrs. Butler. A. The fracture was broken too much. If you have one or two pieces you can do it, but when you have a condition that she had, like a sack full of gravel, and then try to put them together, that is something else. If you attempted it openly, an open reduction, you can't do it.

"Q. Isn't it a usual thing when you have that many fragments to go in and wire them together? A. No, sir; it would be most unusual to do it. You can't do that and put all of the little pieces together. A lot of them are not much bigger than a screw head."

Dr. William T. Howard, a qualified medical expert, who was a witness for Mrs. Butler, testified as follows:

"Q. A great number of these reductions are closed reductions? A. Yes.

"Q. In a fracture of this type that you have described, expecially over an old fracture site, a specialist or any other doctor is confronted with quite a difficult problem of getting a good setting, isn't he, or a good reduction? A. Yes.

"Q. There is always that calculated risk of any

doctor especially these doctors here in Memphis, who practice here of a slip of the fracture at this particular site? A. Yes.

"Q.   That happens in cases where even though the doctor attending the patient is or has exercised that degree of care and skill and ability of other doctors and surgeons in this vicinity, is that correct? A. Yes.

"Q.   This deformity you have referred to, I believe, that is the deformity known generally as a 'silver fork deformity?' A. That is frequently used in describing the fracture.

"Q.   That is the type of deformity that sometimes follows fractures of this type? A. Yes.

"Q.   That is true even though the attending physician exercises that degree of care and skill and ability exercised by other doctors in this vicinity, that is true, is it not? A. That is true, yes."

Another medical expert, Dr. D. J. Cara, exhibited X-ray pictures of Mrs. Butler's fractured wrist which he had taken both before and after the operation. He contradicted Dr. Molinski and Dr. Stewart only as to the number of fractures shown in the pictures, stating he saw one major and one minor fracture. He concludes his testimony, by corroborating them, by saying "that in 'Colles fractures', such as Mrs. Butler sustained, *that deformities do occur regardless of how carefully and skillfully or otherwise the first reduction may be.*" (Italics ours). The mere fact that the professional service rendered was not a success does not in any sense justify the conclusion that the defendant was guilty of actionable negligence.

The petitioner's next assignment is the following:

"Even if respondent was not guilty of negligence, and even if the damages of the wife of petitioner were properly limited to nominal and punitive damages, it does not follow that this petitioner was as a matter of law entitled to no damages."

██ Conceding but not deciding that the wife is entitled to recover nominal damages as a punitive award for the alleged assault and battery by the defendant, it is purely technical and theoretical. It cannot be made the basis for awarding substantial damages to the husband when no right of his had been violated. In all cases of injury to the wife the gist of the husband's cause of action is the loss of the wife's consortium and expenses incurred by reason of the wrongful act. In the absence of any proof disclosing the wife's right to recover compensatory damages resulting from the surgical operation, there is no right of action in the husband to recover substantial damages.

The contention is made by the petitioner that the defendant is guilty of an assault and battery and *is liable in damages for all the consequences,* citing numerous authorities. The answer to this argument of petitioner's counsel is that there is no evidence to show that Mrs. Butler's disability, deformity of the wrist and impairment of its use, results from the alleged assault and battery. On the contrary it is the *consequence* of the original injury which required the aid of a physician and surgeon.

█ The courts have properly made a distinction between actions for damages for negligent malpractice and unauthorized performance of an operation. Thus in *Cady* v. *Fraser,* 1950, 122 Colo. 252, 222 P. (2d) 422, 424, it is said:

"Negligence in treatment, as alleged in the com-

plaint, and treatment without employment present basically different claims. *Hershey* v. *Peake,* 115 Kan. 562, 223 P. 1113, and *Rolater* v. *Strain,* 39 Okl. 572, 137 P. 96, 50 L. R. A., N. S., 880. The one is based on the existence of a contract and authority for service, and the other upon the lack of such contract or authority. The one is based on lack of care or skill in the performance of services contracted for, and the other on wrongful trespass on the person regardless of the skill or care employed. The assertion of one is a denial of the other.''

The facts stated in the foregoing opinion are very similar to that in the case now under consideration. It is a well considered opinion and the principle announced is both logical and just to the parties in interest.

█ In support of the petitioner's contention that negligent malpractice may be shown by testimony other than by expert testimony, there is cited *Ogle* v. *Noe,* 6 Tenn. App. 485. No doubt there are cases where the nature and extent of an injury would sustain this contention, as where the rule res ipsa loquitur applies. But it is not true in the case at bar. While the plaintiff was successful in *Ogle* v. *Noe,* supra, the Court of Appeals made the following important observation: ''The evidence of negligence in the proof we think is *not confined to that furnished by the injury.* There is much more in the record from which negligence can be predicated than this''. (Italics ours).

In *Calhoun* v. *Fraser,* 23 Tenn. App. 54, 126 S. W. (2d) 381, it is held: ''It is only where the injury must have resulted from negligence that the rule of res ipsa loquitur would ever become applicable in malpractice cases.'' In *Merryman* v. *Bunch,* 24 Tenn. App. 408, 145 S. W. (2d) 559, it was held (Felts, J., speaking for the court):

"A physician or surgeon is not liable for failure to cure, but only for 'negligence', a breach of his duty to patient to use that degree of skill and learning which is ordinarily used under similar circumstances by members in good standing in his profession."

■ While the facts show that Mrs. Butler derived no benefit from the professional services rendered, it likewise shows that she received no injury as a result of such services. In these circumstances there is no basis for a recovery of other than nominal damages. For the Court to hold otherwise would result in compelling the defendant to respond in damages for an injury for which he was in no way responsible.

■ The petitioner further contends that mere proof that an operation was conducted according to accepted methods and approved technique, is not conclusive on the issue of negligence, citing and relying upon *Johnson* v. *Ely,* 30 Tenn. App. 294, 205 S. W. (2d) 759. But the issues involved in that case, such as application of the rule *ipsa loquitur,* and circumstances attending the operation tending to show negligence, are not present in the case at bar. There is no contention by petitioner that res ipsa loquitur applies, the sole insistence being that negligence must be inferred because of bad results, and that liability attaches for that reason even though the operation was performed according to generally accepted methods. The weight of authority is to the contrary.

We concede the contention of the petitioner that there are some exceptions to the general rule that *bad results* of an operation do not justify an inference of negligence. But under the facts of the instant case it is not one of those exceptions, due to the very nature of Mrs. Butler's injury. What is said to be the universal rule is stated in 162 A. L. R. 1275, as follows:

"Aside from the cases involving specific acts or omissions, which might be said to form an exception to the general rule, it has been universally held that negligence of a physician or surgeon cannot be established in a malpractice case upon a mere showing that the treatment rendered or the operation performed was unsuccessful or that a bad result followed. The only lack of complete consistency is in the choice of the words used by the courts in supporting this ultimate conclusion." Numerous decisions are cited to support the above statement and several to the contrary.

The assignments of error are overruled, and the judgment of the Court of Appeals is affirmed.