THOMAS N. REDWOOD, Plaintiff in Error, v. DR. ROBERT RASKIND, Defendant in Error. No. 11. —350 S. W. (2d) 414.

Western Section. April 23, 1961.

Certiorari Denied by Supreme Court October 20, 1961.

James R. Younger and Alexander W. Dann, Jr., Memphis, for plaintiff in error.

Neely & Green, and Harold R. Ratcliff, Memphis, for defendant in error.

BEJACH, J. ■ This cause is before this Court for the second time, having previously been disposed of by us October 26, 1960. At that time we sustained a motion to strike the bill of exceptions, on the ground that same had not been signed by the trial judge, and affirmed the judgment of the lower court, because consideration of the

evidence was necessary with reference to all assignments of error. On March 10, 1961, the Supreme Court granted the writ of certiorari, and on authority of Moore v. Chadwick, 170 Tenn. 223, 94 S. W. (2d) 49, remanded the cause to us for consideration of the assignments of error which require an examination of the evidence preserved in what purports to be the bill of exceptions. In Moore v. Chadwick, the Court of Appeals (Eastern Section) had stricken the bill of exceptions because it did not affirmatively appear that same had been filed within the time allowed by law, the date of the judge's signature thereon not being shown. The judge's signature was there, but the date of his signing did not appear. From internal evidence, within the bill of exceptions itself at other parts of same, it did affirmatively appear, however, that the trial judge's signature must necessarily have been affixed within the time allowed by law; and, on that showing, the Supreme Court reversed the Court of Appeals. As has been done in the instant case, the cause was remanded for consideration of the assignments of error requiring examination of the evidence preserved in the bill of exceptions. The Supreme Court's ruling and its remanding to this Court have become the law of the instant case. We will, therefore, now consider and dispose of the assignments of error which involve consideration of the evidence preserved in the bill of exceptions.

There are only two assignments of error in the instant case, which are as follows:

"Assignment of Error 1

"It was error to sustain motion of defendant for directed verdict as the conclusion of all proof on grounds of '*No evidence of any negligence.*'

"Assignment of Error 2

"It was error to sustain motion for directed verdict at the conclusion of all proof on grounds that there was no evidence to justify tolling of the Statute of Limitation."

These two assignments of error present for consideration the single question of whether or not the trial judge erred in granting a motion for directed verdict at the conclusion of all the proof. This question requires consideration, First, of whether there was any evidence offered, based on which a jury might have been warranted in returning a verdict against Dr. Raskind for malpractice; and, Second, if there was such evidence, then whether there was any evidence from which the jury might properly have held that Dr. Raskind had fraudulently concealed his malpractice, so as to toll the running of the Statute of Limitations, T. C. A. sec. 28-304. The facts of this case are as follows:

On October 3, 1958, Thomas N. Redwood filed his declaration in the Circuit Court of Shelby County seeking damages in the sum of $200,000 because of alleged acts of negligence on the part of Dr. Robert Raskind.

On January 22, 1957, Dr. Raskind had performed a disc surgery operation on Mr. Redwood, which is known as a subtotal hemilaminectomy, to correct a left lateral herniation of Mr. Redwood's fourth and fifth lumbar discs and to relieve radiating sciatic pain in his left hip and leg. The declaration alleges that it was the duty of Dr. Raskind to make a thorough examination of the vetebral interspace exposed during the disc surgery, and to make an adequate removal of the disc material to avoid later nerve root damage, which it avers was not done.

Immediately following Dr. Raskind's operation, another operation was performed by an orthopedic surgeon, Dr. William T. Howard, for the purpose of fusing Mr. Redwood's fourth and fifth vertebra. The declaration alleges that Mr. Redwood experienced new intense sciatic pain with coldness and paralysis in his right leg within a few days after his operation, which he had not previously experienced, and that he so advised Dr. Raskind immediately.

Dr. Raskind, who was Mr. Redwood's attending surgeon at that time, examined Mr. Redwood and prescribed physical therapy, telling Mr. Redwood that his symptoms were a natural after effect of the disc surgery with nothing to worry about. When Mr. Redwood's symptoms continued, following his hospital discharge, he was returned to St. Joseph's Hospital, on advice of Dr. Raskind, and a permanent sympathetic nerve block was performed, pursuant to direction of Dr. Raskind, by his assistant Dr. D. Frederick Gioia.

Plaintiff contends that on or about April 4, 1957 he was told by Drs. Raskind and Gioia that his right leg's radiating pain and paralysis were natural results of the disc operation; that his pain and paralysis would continue unabated for from 12 to 14 months, and that he should learn to "live with his condition". It is also contended by plaintiff that as a result of defendant's treatment he became impotent, which fact was made known to defendant on April 4, 1957. The condition in Mr. Redwood's right leg had been diagnosed as circulatory trouble, and treatments for that were administered. On April 10, 1957, Mr. Redwood, on advice of his family physician, Dr. George Paullus, was readmitted to St. Joseph's Hos-

pital where the condition in his right leg, which was thought to be a circulatory deficiency, was treated by Dr. Breen Bland by means of a relatively new and rarely used procedure known as ultra violet blood irradiation. In December 1957, Mr. Redwood consulted Dr. Spencer Speed, an orthopedic surgeon, at Campbell's Clinic in Memphis, at which time, Dr. Speed recommended no definite treatment for Mr. Redwood, but informed him that his trouble was in the neurological field of medicine.

On March 18, 1958, Mr. Redwood sought the aid of Dr. R. Eustace Semmes, a neuro-surgeon, who examined Mr. Redwood, obtained his history, reviewed his previous hospital records, and finally concluded that Mr. Redwood's trouble was in his lower back, caused by spine and sciatic nerve roots. In connection with Dr. Semmes' examination and review of the history of his case, as shown by part of the official record at Baptist Hospital, signed by Dr. Semmes, it appears that Dr. Philip Bond, an assistant to Dr. Semmes, had diagnosed the case as peroneal nerve palsy. On March 28, 1958, Dr. Semmes performed an exploratory operation on Mr. Redwood, in which he found on the right side of the fifth lumbar interspace, an extruded piece of material from the disc, which he removed. After this operation, Mr. Redwood's pain ceased, but the trouble in his right foot, known as ''foot drop'' remained, because the muscles controlling same had atrophied.

Dr. Nicholas Gotten, a neurosurgeon, offered as an expert witness on behalf of defendant, testified positively that this extraneous material found on the right side by Dr. Semmes could not possibly have gotten there as a result of the operation performed by Dr. Raskind on the

left side of the same vertebra. Other witnesses testified substantially the same, and there is no evidence in the record directly contradicting such testimony. In that situation plaintiff has failed to show any causal connection between his trouble which was discovered and corrected by Dr. Semmes and any previous act or treatment of Dr. Raskind. The nexus between plaintiff's ailment and Dr. Raskind's treatment being unproved, the defendant was entitled to a peremptory instruction. Quaker Oats Co. v. Davis, 33 Tenn. App. 373, 403, 232 S. W. (2d) 282; Tennessee Valley Electric Co-op v. Harmon, 39 Tenn. App. 580, 286 S. W. (2d) 593.

A great mass of testimony was offered in this case; but, after considering all of it, it is our conclusion that the learned trial judge ruled correctly when he granted the motion for a directed verdict.

██ For the plaintiff to recover damages, it was incumbent on him that he show by affirmative evidence that defendant, Dr. Raskind, was unskillful or negligent, and that his lack of skill or negligence caused the injury complained of. This he has failed to do. Young v. Dozier, 4 Tenn. App. 148. The test in Tennessee is whether or not a physician or surgeon, to be held liable for malpractice, is lacking in the reasonable degree of learning, skill and experience which ordinarily is possessed by others of his profession, and he must exercise reasonable and ordinary care and diligence to exert his best judgment as to treatment to be afforded in any given case. Blankenship v. Baptist Memorial Hospital, 26 Tenn. App. 131, 168 S. W. (2d) 491; Floyd v. Walls, 26 Tenn. App. 151, 168 S. W. (2d) 602; Burnett v. Layman, 133 Tenn. 323, 181 S. W. 157. In actions for malpractice, there is no pre-

sumption of negligence on the mere failure of judgment or treatment or from the fact that the treatment has been unsuccessful. Negligence cannot be inferred from the happening of an injury. Quinley v. Cocke, 183 Tenn. 428, 192 S. W. (2d) 992; Young v. Dozier, 4 Tenn. App. 148.

■■ It has been held in Tennessee that, in malpractice cases involving the question of skill of a physician or surgeon in performing an operation, the case must be controlled exclusively by expert testimony. Calhoun v. Fraser, 23 Tenn. App. 54, 126 S. W. (2d) 381, 383; Floyd v. Walls, 26 Tenn. App. 151, 168 S. W. (2d) 602; Butler v. Molinski, 198 Tenn. 124, 277 S. W. (2d) 448. The law credits the medical practitioner with the presumption that he has discharged his full duty. Young v. Dozier, 4 Tenn. App. 148.

■ Tried by the above tests, we think the plaintiff in the instant case has totally failed to offer any evidence which entitled him to have the issues presented to a jury. The proof in the instant case shows that, at most, Dr. Raskind was guilty of an erroneous diagnosis of the cause of Mr. Redwood's trouble; but, it establishes, also, that this same erroneous diagnosis was concurred in by numerous other physicians and surgeons, including Drs. Howard, Paullus, Bland, McCurry, Ogle, and even the assistant of Dr. Semmes, Dr. Philip Bond.

■ Since, in our opinion, there is no evidence in the record of negligence on the part of Dr. Raskind which would entitle plaintiff to have the cause submitted to a jury, the contention that Dr. Raskind fraudulently concealed the situation, so as to toll the Statute of Limitations, becomes purely a moot question. It is the law that

fraudulent concealment will toll the Statute of Limitations; but, ordinarily, such fraudulent concealment must be proved by evidence of some affirmative misrepresentation. Haynie v. Hall's Ex'r, 24 Tenn. 290, 42 Am. Dec. 427; Whaley v. Catlett, 103 Tenn. 347, 53 S. W. 131; Hudson v. Shoulders, 164 Tenn. 70, 45 S. W. (2d) 1072.

The case of Hall v. DeSaussure, 41 Tenn. App. 572, 297 S. W. (2d) 81, holds that where a confidential relationship exists as between physician and patient, proof of failure to speak, where there was a duty to speak, produces the same result as a false representation. It is the contention of counsel for plaintiff that the facts of the instant case fall within the rule of Hall v. DeSaussure. There being no proof of any negligence on the part of Dr. Raskind which would make him liable in the instant case, however, it follows that there was no malpractice on his part to be concealed. The case of Hall v. DeSaussure is, therefore, wholly inapplicable.

We conclude that both of appellant's assignments of error filed in this Court must be overruled. The judgment of the lower court dismissing this cause will be affirmed, with the costs adjudged against the appellant.

Avery, P. J. (W.S.), and Carney, J., concur.