**IN THE COURT OF APPEALS OF TENNESSEE**
**WESTERN SECTION AT KNOXVILLE**

--------------------------------------------------------------

FILED

September 9, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

|                                   |   |                          |
|-----------------------------------|---|--------------------------|
| HERMAN DAVIS and wife,            | ) | KNOX CIRCUIT             |
| DARNELL DAVIS,                    | ) |                          |
|                                   | ) |                          |
| Plaintiffs/Appellants             | ) |                          |
|                                   | ) | No. 03A01-9601-CV-00016  |
| v.                                | ) |                          |
|                                   | ) |                          |
| PAUL A. HATCHER, SR., M.D.,       | ) | REVERSED AND REMANDED    |
|                                   | ) |                          |
| Defendant/Appellee                | ) |                          |


Laurence R. Dry, Oak Ridge, For the Appellants

T. Warren Butler, Knoxville, For the Appellees


**O P I N I O N**


INMAN, Senior Judge


        This malpractice action was dismissed on motion for summary judgment. It arose from a routine prostate resection which went awry, resulting in adverse consequences to the plaintiff. A device referred to as a resectoscope manufactured by the Circon ACMI Ohio Manufacturing Company,[1] malfunctioned while being used by and under the control of the defendant, Dr. Paul Hatcher [hereafter, the "defendant"]. It is not disputed that a portion of the penis of the plaintiff, Herman Davis [hereafter, "plaintiff"], was either chemically, thermally or electrically burned away, with disastrous results unnecessary here to be recounted.

        The defendant was allegedly negligent in the care and treatment of his contractual patient, the plaintiff, in these particulars:

        1. Failing to test and inspect the resectoscope;

_____

[1]No longer in the case.

2. Failing to properly utilize the resectoscope;

3. Failing to discover that the resectoscope was improperly functioning;

4. Failing to discover the injury timely.

The defendant admitted that "Herman Davis sustained some type [of] injury at or about the time of the procedure, but how it occurred is unknown to Dr. Hatcher." He denied that the injury was the proximate result of any negligent act or omission on his part and specifically denied that he failed to test or inspect the resectoscope or that he negligently failed to discover a malfunction.

The defendant demanded "strict proof that said injuries and disabilities did not preexist the procedure complained of."

He averred that he did nothing in contravention of acceptable professional practice in the Knoxville community and alternatively "relies on the comparative negligence of the manufacturer of the resectoscope equipment."

On December 9, 1993, the defendant moved for summary judgment, which he supported by the affidavit of Dr. David F. Paulson, a professor of urology at Duke University, who testified that a "[c]areful review of the operative record does not give any indication that the procedure was conducted outside the standards of practice." He further opined that "the care and treatment . . . was proper and well within the standard of care required. The complications that occurred were not proximately caused by any negligent act, omission or departure from the applicable standards of care on the part of Dr. Hatcher . . . . No abnormality in the conduct of the procedure occurred through the action of Dr. Hatcher."

Significantly, Dr. Paulson did not address the cause of the plaintiff's injury. He testified, quite briefly, "that "a transurethral incision of the prostate was conducted. Following this a midline portion of residual prostatic tissue was resected with the electrocautery loop."

Also supportive of the motion was the affidavit of the defendant, who testified that "[t]wo days after the surgery, the plaintiff was found to have an unexpected

condition of the central glans and meatus which appeared as a redness and induration . . . . [which] gave the appearance of being caused by a burn in the area *where the resectoscope was in contact with the penis during the surgical procedure.*" (Emphasis added.)  He testified that "more likely than not [the burn was] caused by a defective condition of the resectoscope which was unknown and unforeseeable by me" and that he was not negligent in any respect.

While the motion was pending, the defendant amended his answer by alleging that the manufacturer of the resectoscope was negligent in failing to warn him that (1) cutting loops and knives should be used only one time; (2) caustic chemicals should be thoroughly removed from the resectoscope; (3) cutting loops and knives were not of uniform length, which could result in "electrically charged uninsulated parts of same to electrically charge parts of the equipment coming in contact with patients."  The amended answer accused the manufacturer of negligently failing to warn the University of Tennessee Memorial Hospital [where the procedure was performed] of the importance of uniform lengths of cutting loops and knives and the necessity for proper cleaning of the resectoscope.  The defendant also charged the hospital with negligence in (1) failing to furnish him proper equipment, properly maintained; (2) failing to advise him of the manufacturer's warnings re: the safe use and care of the resectoscope; (3) furnishing him with "a cutting knife of improper length which resulted in electrically charging portions of the resectoscope coming in contact with the patient."

The plaintiff responded to the motion for summary judgment by memorandum filed March 7, 1995, exhibiting the affidavits of Dr. William Campbell, Dr. Dennis Doblar and Dr. Cecil Morgan, Jr., all of whom had previously testified by deposition.

Dr. Campbell, a biomedical engineer, designs biomedical equipment and teaches the use of powered biomedical equipment.  He testified that he reviewed photographs of the burn suffered by the plaintiff, all medical data, various depositions, including that of the defendant, and expressed his opinion that the burn

injury to the plaintiff was caused by electrical power from the resectoscope which "would not otherwise have occurred had the instrument been used in accordance with recognized biomedical engineering principles, and in accordance with manufacturer's recommendations."

Dr. Doblar is a professor of anesthesiology and biomedical engineering at the University of Alabama. He testified that he had reviewed photographs of the burn suffered by the plaintiff, all medical data, hospital records and various depositions, including the deposition of the defendant. He agreed with the testimony of Dr. Campbell respecting the cause of the injury to the plaintiff and opined that the "current escaped the instrument through a reused knife or loop or through operator error - through the application of power while the resectoscope was on its way out of or into the patient . . . . under the control of Dr. Hatcher." He opined that the injury was below the acceptable professional practice in Knoxville and that the defendant "acted with less than or failed to act with ordinary and reasonable care in accordance with such standard."

Dr. Morgan, a urologist practicing in Alabama, testified that he had reviewed all pertinent data appertaining to the injury suffered by the plaintiff and that he was familiar with the appropriate standard of care. He further testified, "More likely than not, Dr. Hatcher caused the burn injury . . . by using the resectoscope while it was improperly or defectively configured, in which case he should have been aware of that fact; or Dr. Hatcher used the instrument inappropriately."

On the same date that the plaintiff filed his response to the motion for summary judgment [March 7, 1995], the defendant filed a "supplement" to his motion, to which he exhibited, or made reference to, his affidavit and excerpted portions of the depositions of six witnesses to "illustrate that no one knows how this injury occurred . . . . that it could have been caused by negligence on the part of the . . . [h]ospital, *negligent use of the equipment by Dr. Hatcher*, or negligence on the part of the manufacturer of the equipment." (Emphasis added.) One of these

depositions was that of Dr. Campbell, whose affidavit has previously been referenced; he testified, on discovery, that the injury was a thermal burn and that "I do not know how it happened," and that he did not know the standard of care prevailing in Knox County.

Parenthetically, at this juncture, we note that the defendant's argument that the affidavit of Dr. Campbell is at odds with his depositional testimony and therefore cannot be rationally considered as a rebuttal testimony. We will address this issue later.

Much complaint is given over by the plaintiff to the filing, on March 7, 1995, by the defendant, of a host of materials exhibited to the supplement to the motion for summary judgment which was heard on March 8, 1995. Whether such late filing is permitted by Rule 56, TENN. R. CIV. P,. is a question we pretermit because it is unnecessary to a resolution of the issue before this Court, that being the propriety of the dismissal of this case.

The affidavits in opposition to the motion squarely posed the issue of the defendant's negligence, which ordinarily would require that the motion should be denied since issues of material fact are readily apparent. At argument, counsel agreed, but insists that the affidavit testimony is in "absolute conflict" with the depositional testimony and is on that account nonprobative since a factual issue cannot be created by filing an affidavit contradicting earlier depositional testimony, citing *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453 (6th Cir. 1988).

We agree that the affidavit of Dr. Campbell is not probative because he disavowed knowledge or opinion of the standard of care practiced in Knoxville, a prerequisite to the consideration of his testimony. T.C.A. § 29-26-115(a)(1); *Keith v. Witt*, 919 S.W.2d 613, 614 (Tenn. Ct. App. 1995).

We do not agree that the affidavit of Dr. Doblar is in fatal conflict with his deposition. In the former, he testified that the resectoscope was under the control of the defendant, that the injury to the plaintiff was unacceptable practice in Knoxville

and that the defendant failed to act with ordinary care. In the latter, he testified that "I do not know" what specifically caused the burn. Dr. Doblar's affidavit may rationally be considered as expository to his deposition rather than destructive of it. At the very least, a reconciliation of his testimony requires a weighing of it, which is impermissible in a summary judgment procedure. *Taylor v. Nashville Banner Publishing Co.*, 573 S.W.2d 476 (Tenn. Ct. App. 1978).

Neither do we agree that the affidavit of Dr. Morgan fatally conflicts with his prior depositional testimony. In the former, he testified that more likely than not the defendant caused the burn injury by using the resectoscope when it was defectively configured, in which case he should have been aware of the fact. In the latter, he testified " . . . and just as now, I cannot tell you what exactly happened." We think a definitive reading of his entire deposition can logically lead a dispassionate enquirer to the conclusion that Dr. Morgan was careful to differentiate between an observed truth and a formulated opinion. In any event, any reconciliation of his testimony, if such is necessary, requires a weighing of it, which is impermissible. *Taylor, supra*.

Whether summary judgment was properly granted is a question of law, with no presumption of correctness. *Gonzales v. Alman Coal Co.*, 857 S.W.2d 42 (Tenn. Ct. App. 1993). Our evaluation of the motion requires a determination of whether a material, factual issue exists and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993).

Against these standards, we conclude the motion was improvidently granted because there are contested issues of material facts which cannot be resolved on the basis of affidavits. Doubtless a contributing factor was the inordinate delay -- 15 months -- of the plaintiff in responding to the motion; superimposed is the stressed argument that the cause of the plaintiffs' injury was "unknown," with which we disagree. There is abundant evidence in the record that (1) the plaintiff's injury was caused by the device operated and controlled by the defendant; (2) the injury thus inflicted was the burning of tissue; (3) the particular device functioned properly in a

subsequent procedure; (4) the treatment which resulted in the burn injury was below acceptable standards. Whether the burn was of thermal or chemical or electrical origin is, in our judgment, of minimal legal significance, notwithstanding the herculean efforts to prove the nature of the burn.

The defendant argues that the plaintiff's experts inconsistently testified, thereby negating any probative value of their testimony. To an extent, this argument is meritorious, but not entirely so. For instance, Dr. Morgan testified by affidavit that, more likely than not, "Dr. Hatcher *caused* the burn injury to Herman Davis by using the resectoscope while it was improperly or defectively configured, in which case *he should have been aware of the fact* . . . . the instrumentality . . . was in the exclusive control of Paul Hatcher, M.D. . . . *the injury ordinarily does not occur in the absence of negligence.*" (Emphasis added.) He had previously testified on discovery that he did not know -- had no way of knowing -- whether the burn was of thermal or radioactive or electrical origin and when asked if he had any basis for assuming the injury was caused by "some human error," he replied that he did not. This question and response implied personal knowledge, because the thrust of the preceding questions, while purporting to seek an opinion only, was seemingly directed to personal knowledge as contrasted to the elicitation of an opinion.

> Q.      . . . did you search Dr. Hatcher's records to try to find something that might have caused it?
> A.      Well, I read everything to try to understand what happened and just as now *I cannot tell you what exactly happened.*
> Q.      You assume this injury was caused by some human error but you don't have any factual basis for that assumption do you?
> A.      That's correct.
> (Emphasis added.)

We do not believe that the affidavit of Dr. Morgan contradicts his prior testimony to the extent urged by the defendant, keeping in mind that in summary judgment proceedings the evidence may not ordinarily be weighed and the summary judgment proceedings may not substitute for a merit trial.

T.C.A. § 29-26-115 is relied on by the plaintiff. This statute provides:

> In a malpractice action . . . there shall be no presumption of negligence on the part of the defendant.  Provided, however, there shall be a rebuttable presumption that the defendant was negligent where it is shown by the proof that the instrumentality causing injury was in the defendant's exclusive control and that the accident or injury was one which ordinarily does not occur in the absence of negligence.

It was held in *Ward v. United States*, 838 F.2d 182 (6th Cir. 1988) that the presumption created by this statute is the doctrine of *res ipsa loquitur*, which should not be applied where the plaintiff offers evidence of specific acts of negligence.  But we see no reason why the plaintiff may not, consistently with Rule 8, TENN. R. CIV. P., plead the application of the statute as an alternate ground for relief.  There is evidence in the record that the instrumentality causing the injury was under the exclusive control of the defendant and that the injury was one that does not ordinarily occur in the absence of negligence, thus creating a rebuttable presumption of negligence for resolution upon a merit trial and not upon a motion for summary judgment.

The judgment is reversed at the cost of the appellee and the case is remanded for trial.

 

_____

William H. Inman, Senior Judge

Concur:

 

_____

W. Frank Crawford, Presiding Judge

 

_____

David R. Farmer, Judge