Willie JACKSON, Plaintiff,

v.

**UNITED STATES of America, Defendant.**

No. 97–2542 D/V.

United States District Court,
W.D. Tennessee,
Western Division.

Oct. 5, 1998.

---

Willie Jackson, Memphis, TN, pro se.

Brian J. Quarles, U.S. Attorney's Office, Memphis, TN, for U.S.A.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

DONALD, District Judge.

Plaintiff, Willie Jackson, formerly an inmate at the Federal Correctional Institution ("FCI") in Memphis, filed this action under the Federal Tort Claims Act, 28 U.S.C. § 2672, seeking damages for injuries suffered during a fire at FCI Memphis on October 20, 1995. The United States has filed a motion to dismiss or for summary judgment, and plaintiff has filed a motion to amend his complaint to add Eighth Amendment claims under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The Government filed a memorandum supporting its motion, with various affidavits and supporting exhibits.

The undisputed and supporting facts in this case show that during October 1995 inmates at FCI Memphis were keeping abreast of Congressional hearings regarding the United States Sentencing Guidelines and statutes for drug trafficking crack cocaine versus powder cocaine.[1] Anticipating a Congressional decision on October 20, 1995 to maintain existing structure, some inmates at FCI Memphis had planned to protest on the FCI compound, the open area between the various general use buildings and inmate housing units. Although some inmates seemingly intended to stage a nonviolent protest, a number of inmates proceeded to riot. Willie Jackson, the Plaintiff, was incarcerated at FCI Memphis on October 20, 1995 as a parole violator. FCI officials had assigned Jackson to the Memphis housing unit. (Plaintiff compl. ex. § 8, p. 1). The undisputed facts show that the following sequence of events occurred on October 20, 1995:

1) At approximately 11:15 a.m., the prison staff received information that inmates planned a work stoppage. (Defendant ex. 2, attach. A: Incident summary, p. 3).

2) At approximately 12:05 p.m., the inmate population began to set trash can fires in the Memphis housing unit. *Id.*

3) At approximately 12:05 p.m., staff detected fires in other units as well, and proceeded to use the fire extinguishers available in the units to put out those small fires. *Id.*

4) At approximately 12:05 p.m., the operations Lieutenant ordered a total inmate recall, and directed the staff to lock down the non-participating inmates in each of the

---

1. Federal statutes and the Guidelines frequently result in the imposition of the same sentence for trafficking in crack cocaine, as would be imposed for trafficking in 100 times the quantity of powder cocaine, a distinction that has been repeatedly upheld by every federal appellate court.

housing units after their unit had been cleared of smoke. *Id.*

5) At approximately 12:10 p.m., staff control of the institution began to rapidly deteriorate. *Id.*

6) At approximately 12:20 p.m., the kitchen supervisor, Young, told Jackson to return to his housing unit for a lock down. (Plaintiff compl. ex. 8A).

7) At approximately 12:39 p.m., various inmates were openly confronting the staff and totally disregarding their orders. (Defendant ex. 2, attach. A: Incident summary, p. 4).

8) At approximately 12:50 p.m., several inmates designated themselves as group leaders. *Id.*

9) At approximately 1:20 p.m., inmates were brandishing weapons and took possession of the Memphis unit officer's keys. *Id.* at p. 5.

10) At approximately 2:30 p.m., the staff observed inmates breaking out the windows in the center office areas of the Memphis housing unit. *Id.* at p. 6.

11) At approximately 2:40 p.m., all staff were ordered to evacuate the institution. *Id.*

12) At approximately 2:43 p.m., fires in the Memphis and Delta units were burning out of control. *Id.*

13) At approximately 2:43 p.m., the staff and inmates began rescuing those trapped in the burning units. *Id.*

14) While Jackson was confined to his cell, he inhaled carbon monoxide produced from the fires. (Plaintiff compl. p. 3A).

15) Firefighters made their way to Jackson's cell, and facilitated his release. (Plaintiff compl. ex. § 8, p. 2).

16) Emergency Medical Technicians began to prepare Jackson for transportation to an outside hospital, but Dr. Frederick Cole, the Clinical Director at FCI Memphis, instructed the individuals that Jackson was to remain in the Health Services Department at FCI Memphis. *Id.*

It was not until Saturday, October 21, 1995, at approximately 8:00 a.m., that control was established in the facility by prison officials. FCI officials decided to temporarily transfer many inmates to other correctional institutions because the housing units at FCI Memphis were uninhabitable. On October 23, 1995, they reassigned Jackson to FCI Cumberland, Maryland. On October 23, 1995, Jackson, complaining of chest pains, visited the FCI Cumberland medical clinic. Medical staff there referred him to an outside hospital where doctors examined, and diagnosed his condition. According to the October 26, 1995 entry of the Medical Care Chronological Record, the hospital discovered that Jackson's left lung had collapsed.

Jackson filed an administrative tort claim with the Bureau of Prisons Mid–Atlantic Regional Office ("Mid–Atlantic") which was received on February 29, 1996. Jackson claimed that Bureau of Prison ("BOP") officials knew or should have known that better precautionary measures were needed to prevent his injury. Jackson avers that the staff at FCI Memphis was not properly trained and supervised in accordance with BOP policies and procedures. Mark H. Luttrell, the warden at FCI Memphis, stated that no BOP regulations or policy exists which describes (1) specific preventive measures to be taken prior to the outbreak of an inmate disturbance or riot, (2) whether or when to lock inmates down, or that prohibits locking inmates down in such a situation, (3) specific staff responses to particular events that occur in a disturbance or riot. (Luttrell aff. ¶ 15).

The Bureau of Prisons denied Jackson's administrative claim on August 23, 1996. Jackson initially requested that the denial be reconsidered, but on April 9, 1997, withdrew the claim. Subsequently, the Bureau of Prisons dismissed the claim on April 15, 1997. Jackson, *pro se,* filed this FTCA action on June 16, 1997. On April 14, 1998, he filed his amended complaint asserting Eighth Amendment claims of cruel and unusual punishment under *Bivens.*

## I. STANDARD OF REVIEW

Defendant filed a motion to dismiss under Rule 12(b)(6) or, alternatively, for summary judgment under Rule 56. As the Court had considered "matters outside the pleadings,"

the Court treats the motion as one for summary judgment. Fed.R.Civ.P. 12(b). *See Rich v. United States,* 119 F.3d 447, 449 (6th Cir.1997); (citing *Cook v. Providence Hospital,* 820 F.2d 176, 178 (6th Cir.1987)).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986). The burden on the party moving for summary judgment may be discharged by pointing out that there is an absence of evidence to support the nonmoving party's case. *Kauffman v. Allied Signal, Inc., Autolite Div.,* 970 F.2d 178, 182 (6th Cir.), *cert. denied,* 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992) (the moving party need not support its motion with affidavits or other similar materials "negating" the opponent's claim) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The Court may also consider any material that would be admissible or usable at trial, including exhibits that have been properly made a part of an affidavit. 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2721, at 40, § 2722, at 56 (2d ed.1983).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Id.* The party opposing the motion must "do more than simply show that there is some meta physical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In short, the nonmoving party may not oppose a properly supported motion for summary judgment by mere reliance on the pleading. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "[I]n the 'new era' of summary judgments that has evolved from the teachings of the Supreme Court in *Anderson, Celotex* and *Matsushita,* trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence." *Cox v. Kentucky Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir.1995). "If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion must be granted." *Id.*

Additionally, a pro se complaint is held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

## II. SUBJECT MATTER JURISDICTION

The district courts shall have exclusive jurisdiction of civil actions on claims against the United States for money damages or personal injury caused by the omission, negligence or wrongful act of any employee of the Government while acting within the scope of his office or employment. 28 U.S.C. § 1346(b)(1). The circumstances must be such that the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. *Id.*

Jackson's claim, against the United States, is to recover damages for personal injuries allegedly caused by negligent acts of the prison staff. The events giving rise to this cause of action occurred in Shelby County, Memphis, Tennessee which is in the Western District of Tennessee. Therefore, the Court has jurisdiction over Jackson's complaint, and the substantive law of Tennessee will govern his claims of negligence.

## III. STATUTE OF LIMITATIONS

█ Jackson asserts that his constitutional

rights under the Eighth Amendment[2] were violated by the Government[3] on October 20, 1995. On April 14, 1998, Jackson filed an amended complaint pursuant to Fed.R.Civ.P. 15, for the first time asserting a claim that FCI officials violated his Eighth Amendment rights by exposing him to smoke from the Memphis unit fires.

■ *Bivens* actions are governed by the same statute of limitations that govern causes of action under 42 U.S.C. § 1983. *McSurely v. Hutchison,* 823 F.2d 1002, 1005 (6th Cir.1987). "Insofar as the policies underlying limitations periods are concerned, we believe that an action against a federal officer for violation of a plaintiff's constitutional rights is analogous to 42 U.S.C. §§ 1981 and 1983 actions commenced against a state officer." *McSurely,* 823 F.2d at 1005; (citing *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895, (1978)).

■ The Government correctly contends that the statute of limitations applicable to Jackson's *Bivens* claims is one year.[4] *See Wilson v. Garcia,* 471 U.S. 261, 268, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (holding that federal courts look to state personal injury statute of limitations for statute of limitations governing § 1983 claims); *Berndt v. State of Tennessee,* 796 F.2d 879, 883 (6th Cir.1986), following *Wilson* and holding Tenn.Code Ann. § 28–3–104 (1988) one-year state statute of limitations governing actions for personal injuries applies to § 1983 actions.

Jackson's cause of action accrued no later than October 26, 1995, the day he learned from the Maryland hospital that he had a collapsed lung. Jackson's original complaint before this Court was mailed on June 12, 1997, and filed on June 16, 1997. The Government argues that Jackson's *Bivens* claims

are barred by the one year statute of limitations. Accordingly, the last day upon which Jackson could have filed his complaint was October 25, 1996.

The United States Code requires certain prisoner suits to be filed with an appropriate administrative agency for review and possible settlement, before the suit is commenced in a District Court. Title 42 U.S.C. § 1997e(a) states "no action shall be brought with respect to prison conditions under section 1983 of this title [42], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted". The head of each federal agency may determine and settle any claim for money damages against the United States for personal injury caused by the omission, negligence or wrongful act of any employee of the agency while acting within the scope of his employment. 28 U.S.C. § 2672 (in pertinent part). However, remedies against the United States, pursuant to sections 1346(b) and 2672, do not apply to civil actions brought for a violation of the United States Constitution 28 U.S.C. § 2679(b)(2).

Since Jackson's constitutional cause of action was not permitted to be filed with his administrative tort claim, then the statute of limitations would not be tolled while the Bureau of Prisons was considering the administrative claim. The *Bivens* claims, pled in the amended complaint, should have been filed by October 25, 1996. Consequently, the statute of limitations bars Jackson's claims pursuant to *Bivens v. Six Unknown Agents.*

Accordingly, as there is no genuine issue of material fact that Jackson's *Bivens* claim is

---

**2.** Amendment VIII to the Constitution of the United States states that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted".

**3.** 42 U.S.C. § 1983 states, in pertinent part, that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .".

**4.** Tenn.Code Ann. § 28–3–104, in pertinent part, states:

(a) The following actions shall be commenced within one (1) year after the cause of action accrued:

(3) Civil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes;

untimely, the motion for summary judgment is GRANTED.

## IV. DISCRETIONARY FUNCTION EXCEPTION

 A claim pursuant to 28 U.S.C. § 1346(b)(1) will be precluded if it is based upon the exercise or performance (or the failure to exercise or perform) of a discretionary function or duty on the part of a federal agency, or an employee of the Government, even if such discretion was abused. 28 U.S.C. § 2680(a).[5] Nonetheless, the act or omission by an employee of the Government, in execution of a statute or regulation, must be exercised with due care. *Id.*

 The U.S. Supreme Court has developed a two-prong test to govern the application of the discretionary function exception. *Rosebush v. United States,* 119 F.3d 438, 444 (6th Cir.1997). First, the court must determine whether the conduct violated a mandatory regulation or policy that allowed no judgment or choice. *Rosebush,* 119 F.3d at 444; *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), (citing *Berkovitz by Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). If there is no mandatory regulation governing the conduct, and the conduct involved an exercise of judgment, then the court must determine "whether that judgment is the kind that the discretionary function exception was designed to shield." *Id.*

 The reason the court must first determine if the action involved was a matter of choice for the employee is because "conduct cannot be discretionary unless it involves an element of judgment or choice." *Rich v. United States,* 119 F.3d 447, 450 (6th Cir. 1997); (citing *Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954). If there is no federal statute, regulation or policy specifically prescribing a course of conduct or action, then the employee must exercise judgment which should be afforded some protection. *Id.*

Congress and the Supreme Court have left it up to the lower courts to define this vague standard over time by applying it to fact patterns as they arise. *Rosebush,* 119 F.3d at 445. The reasoning behind the exception was to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *Rosebush,* 119 F.3d at 445; *Gaubert,* 499 U.S. at 323, 111 S.Ct. 1267; (quoting *United States v. Varig Airlines,* 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)).

Nevertheless, the discretionary function exception could potentially swallow the entire act if courts do not carefully apply the second prong. *Rosebush,* 119 F.3d at 445. The Supreme Court specifically stated that there are discretionary acts that are within the scope of a government agent's employment, "but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." *Rosebush,* 119 F.3d at 445; (quoting *Gaubert,* 499 U.S. at 325, n. 7, 111 S.Ct. 1267).

 Not every action that involves some degree of choice falls within the exception. *See Gotha v. United States,* 115 F.3d 176, 180 (3d Cir.1997) (citing *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Arilines),* 467 U.S. 797, 814–16, 104 S.Ct. 2755, 81 L.Ed.2d 660) (holding federal agency decision to use a spot-checking process in inspecting aircraft an exercise of policy discretion); *United States v. Gaubert,* 499 U.S. 315, 332, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (holding supervision of day-to-day activities of a failing thrift institution based on public policy considerations of protecting the federal savings and loan insurance fund and federal oversight of the thrift industry); *Fisher Bros. Sales, Inc. v. United States,* 46 F.3d 279, 285 (3d Cir.1995) (en banc) (holding decision of Food and Drug Administration to refuse entry to suspect contaminated fruit discretionary); *Sea–Land Serv. v. United*

---

5. The provisions of this chapter and section 1346(b) of this title shall not apply to—
 (a) Any claim ... based upon the exercise or performance or the failure to exercise or perform

a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

*States,* 919 F.2d 888 (3d Cir.1990) (decision to use asbestos in construction of ships was a discretionary decision); *General Public Utils. Corp. v. United States,* 745 F.2d 239 (3d Cir.1984) (action of Nuclear Regulatory Commission in not reporting safety information was discretionary).

■■■■■ Basically, the exemption for discretionary functions seeks to insulate, from judicial inquiry, the propriety of basic policy decisions made by officials of coordinate branches of government in whom are vested broad and pervasive decision-making responsibility. *Moffitt v. United States,* 430 F.Supp. 34, 38 (E.D.Tenn.1976); (citing *Downs v. United States,* 382 F.Supp. 713, 747 (D.C.Tenn.1974)). In determining whether a complaint states a claim falling within any of the exceptions, the substance of the plaintiff's claim, and not the language used in stating it, is controlling. *Moffitt,* 430 F.Supp. at 37. The crucial issue is not whether the plaintiff asserts his claim in charges of negligence, but whether Congress intended to bar this type of suit, under whatever legal theory brought, by expressly limiting the waiver of governmental immunity in the Federal Tort Claims Act. *Id.*

In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment. *Rich,* 119 F.3d at 450; (citing *Berkovitz,* 486 U.S. at 537, 108 S.Ct. 1954).

If the Government's motion to dismiss, based upon the discretion function exception, raises an issue of fact, then such motion must be denied. *Moffitt,* 430 F.Supp. at 38.

The Government, in the case at bar, primarily bases its motion for summary judgment on the discretionary function provisions of the FTCA. There is no reasonable dispute that BOP officials responding to a riot are in general exercising a discretionary function. Moreover, the BOP's generalized response to

the riot appears to have been completely reasonable. The flaw in the Government's motion, however, is that the Government has not demonstrated a connection between the exercise of discretion and the injury to Jackson.

The Government has not introduced any proof regarding exactly how the decision to leave Jackson in his cell during the fires was an exercise of the discretionary function. Warden Luttrell stated that no BOP regulation or policy exists regarding the proper way prison staff is to handle events such as those which occurred on October 20, 1995. (Luttrell aff. ¶ 15). The Government relies upon this assertion to conclude that all conduct by the prison staff in handling the riot on October 20, 1995 was discretionary.

There is no way this Court can accurately determine whether Jackson's injuries are precluded by the discretionary exception. The Government has not carried its burden to establish the absence of a genuine issue of material fact that any injury to Jackson was not due to the negligence of employees of the United States. The Government has not established any right to summary judgment, thus requiring an examination of the reasonableness and prudence on the part of the staff.

### V. THE STANDARD OF CARE

■■■■ The liability of the United States in actions under the Federal Tort Claims Act is governed by the law of the place where the alleged tort occurred. *Ward v. United States,* 838 F.2d 182, 184 (6th Cir.1988) (citing 28 U.S.C. §§ 1346(b), 2674; *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492, (1962)).

#### A. *Medical Malpractice:*

■■■■ The burden of proof for liability of medical personnel is set forth in Tennessee Code Annotated § 29–26–115.[6] This statute

---

6. T.C.A. § 29–26–115(a) states:

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

was used by the Tennessee Supreme Court in deciding *Kilpatrick v. Bryant,* 868 S.W.2d 594, 597 (1993).

■ Under Tennessee law, a physician's duty is to exercise reasonable care and diligence. *Ward,* 838 F.2d at 186. He must exercise his best judgment regarding treatment, and is not guilty of malpractice if he chooses a course of treatment supported by other physicians in good standing. *Ward,* 838 F.2d at 186; (citing *Truan v. Smith,* 578 S.W.2d 73, 75–76 (Tenn.1979)).

■ A physician is not the insurer of the patient; he is only liable for negligence, and negligence is not presumed from the fact that the treatment is unsuccessful. *Ward,* 838 F.2d at 186. Liability for malpractice depends on whether or not the physician is lacking in and fails to exercise the reasonable degree of learning, skill, and experience that is ordinarily possessed by others of his profession. *Ward,* 838 F.2d at 186–187; (citing *Watkins v. United States,* 482 F.Supp. 1006, 1012 (M.D.Tenn.1980)). There is no presumption of negligence; rather, the law presumes the physician has discharged his full duty. *Ward,* 838 F.2d at 187; (citing *Redwood v. Raskind,* 49 Tenn.App. 69, 350 S.W.2d 414 (1961)). Moreover, negligence may not be presumed from the mere fact of injury. *Ward,* 838 F.2d at 187; (citing *Johnson v. Lawrence,* 720 S.W.2d 50, 56 (Tenn.Ct. App.1986)). An honest mistake in judgment is not sufficient to find a physician negligent. *Ward,* 838 F.2d at 187; (citing *Perkins v. Park View Hosp.,* 61 Tenn.App. 458, 456 S.W.2d 276 (1970)).

■ In determining the degree of learning and skill required of a medical practitioner in the treatment of a particular case, regard must be given to the state of medical science at the time. *Ward,* 838 F.2d at 187; (citing *Ogle v. Noe,* 6 Tenn.App. 485 (1927)). "Evaluation of professional judgment must be based upon the facts available to the professional and the accepted practice among members of the profession under such facts." *Ward,* 838 F.2d at 187; (citing *Perkins,* 61 Tenn.App. at 482–483, 456 S.W.2d 276).

Dr. Cole stated that he was "called to the front gate [on October 20, 1995] to examine several inmates who had been placed at that location by fire department paramedics for evacuation to local community hospitals." (Cole aff. ¶ 5). Jackson stated that while he was at the front gate, he "was in pain" and his lungs felt like they were on "fire". (Jackson compl. § 8, p. 2). Dr. Cole stated that he examined Jackson at the front gate and "found no medical evidence that he [Jackson] was experiencing respiratory distress from exposure to smoke inhalation," or that Jackson should be transferred to a local hospital. (Cole aff. ¶ 6). Additionally, Dr. Cole stated that "there was no evidence of any discernible distress whatsoever" by Jackson. (Cole aff. ¶ 6).

The Government has not come forth with evidence to show that Dr. Cole exercised a reasonable degree of skill, possessed by others in the medical profession, in treating Jackson. Dr. Cole never x-rayed Jackson, nor took a blood sample to determine if carbon monoxide existed in Jackson's blood. Thus, the Government has failed to show that Dr. Cole's course of treatment would be supported by other physicians in good standing.

The only evidence before the Court regarding the proper course of treatment by the medical community at large is the act, by the paramedics, of bringing Jackson to the front gate for evacuation to a local hospital. It may be inferred from such conduct that the paramedics believed that the proper course of treatment was to examine Jackson more thoroughly at an outside hospital.

### B. *Negligent Acts or Omissions:*

■ The FTCA allows suit by a federal prisoner for personal injury suffered as the result of employee negligence. *Flechsig v. United States,* 991 F.2d 300, 303 (6th Cir.1993). There is no respondeat superior relationship between the Government and a prisoner. *Jackson v. United States,* 413 F.Supp. 516, 519 (N.D.Ohio 1976). In *Cohen v. United States,* 252 F.Supp. 679 (N.D.Ga. 1966), recovery was allowed for an inmate whose injuries were inflicted by a fellow prisoner. *Id.* However, under the Tort Claims Act, there must be fault upon the part of a Government employee to establish liability. *Id.*

The three elements necessary for a negligence cause of action in Tennessee are: (1) a duty of care owed by the defendant to the plaintiff, (2) a failure on the part of the defendant to perform that duty, and (3) an injury to the plaintiff resulting proximately from the defendant's breach of that duty of care. *Ruth v. Ruth*, 213 Tenn. 82, 372 S.W.2d 285, 287 (1963). If, as a matter of law, the plaintiff has failed to allege or prove facts sufficient to establish (1) an existence of a duty to act, (2) a breach of the duty, and (3) a proximate cause relationship, then dismissal or summary judgment would be appropriate. *Doe v. Linder Construction Company, Inc.*, 845 S.W.2d 173, 183 (Tenn.1992). Prison officials are not insurers of prisoner's safety. *Cockrum v. State of Tennessee*, 843 S.W.2d 433, 437 (Tenn.App.1992) (husband of inmate claimed his wife's suicide was proximately caused by the negligent supervision of prison staff). Except in the most obvious cases, whether the prison officials acted reasonably to protect a prisoner's safety requires expert proof or other supporting evidence. *Id.*

It is undisputed that Jackson was incarcerated at FCI Memphis at all times relevant to the events giving rise to this cause of action. (Government mtn. ¶ 1). This shows that a duty of care was owed to the Plaintiff by the Defendant. Jackson stated that the prison staff left their posts in the Memphis housing unit while the unit was on fire. (Jackson compl. § 8, p. 1). A prison officer gave his keys to an inmate to release the confined inmates, but no one came. (Jackson compl. § 8, p. 1). This shows that the Defendant breached its duty to the Plaintiff. As a result of being locked in his cell while the fires where burning, Jackson inhaled carbon monoxide. (Jackson compl. p. 3(A)). The medical record states that Jackson's left lung had collapsed. (Chronological Record of Medical Care entry on October 26, 1995). This shows that the Defendant's breach of its duty was the proximate cause of the Plaintiff's injuries. Accordingly, Jackson has sufficiently pled the three elements necessary for a negligence cause of action under Tennessee law pursuant to *Ruth*, supra.

No evidence has been presented by the Government to show that (1) the housing units were cleared of smoke before non-participating inmates were locked down, and (2) the continued lock down of inmates in housing units that were burning out of control was reasonable and not delayed by negligence on the part of the prison staff. The Government has not shown that these acts are the kind that the discretionary function exception was designed to shield.

Under the *Anderson* standard for summary judgment, the party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact." *Kochins*, 799 F.2d at 1133. All inferences must be read in light most favorable to the party opposing the motion. *Id.*

Therefore, the Governments' motion for summary judgment on Jackson's FTCA cause of action is DENIED because a genuine issue of material fact exists for trial.

Based on the foregoing, Defendant's motion for summary judgment is GRANTED in part and DENIED in part in accordance with this order.